

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **THEREASA W. LACY** | **DOCKET NO. 07-CV-1592** |
| **VERSUS** | **JUDGE DRELL** |
| **HARLEY LAPPIN, ET AL** | **MAGISTRATE JUDGE KIRK** |

## REPORT AND RECOMMENDATION

Pro se Plaintiff, THEREASA W. LACY, is a non-prisoner who would visit Inmate Michael Wilson at the United States Penitentiary in Pollock, Louisiana ("USP-P"), during his period of incarceration at that institution. Wilson and Lacy filed suit together pursuant to 42 U.S.C. §1983 and <u>Bivens v. Six Unknown Federal Agents</u>, 403 U.S. 388 (1971), against the Director of the Bureau of Prisons ("BOP") and individuals employed by the BOP at USP-P.

Suit was originally filed in the District of Columbia on February 20, 2004, and the complaint was served on March 22, 2004. The defendants filed a "Motion to Dismiss or in the alternative to Transfer Case" on July 21, 2004, in the District of Columbia. On November 1, 2004, the district judge ordered that the case be transferred, but erroneously transferred the case to the Middle District of Louisiana ("MDLA") rather than the Western District of Louisiana. The Magistrate Judge in the MDLA signed an order on March 16, 2005, transferring the case to the Western District, but

the case was not received in this district until December 22, 2006.

On May 30, 2007, it was ordered that Ms. Lacy's case be severed from Mr. Wilson's lawsuit. On June 1, 2007, Ms. Lacy's application to proceed in forma pauperis was granted. After filing a motion for extension of time, Plaintiff Lacy filed an amended complaint on July 9, 2007.[1] A new docket number was assigned to Lacy's case on September 25, 2007.

## FACTUAL BACKGROUND

On April 19, 2003, Plaintiff drove herself and another female visitor to USP-P. Plaintiff has alleged that, while she was visiting Inmate Michael Wilson, Officer Hunt informed them that the woman who rode with Plaintiff had been asked to leave the facility.[2] Officer Hunt asked Plaintiff for the keys to her vehicle so that the other visitor could leave until visiting hours were over; otherwise, Ms. Lacy would have to leave to drive the

---

[1] The undersigned notes that the signature on Ms. Lacy's amended complaint is substantially different from Ms. Lacy's signature on her application to proceed in forma pauperis. Rule 11 of the Federal Rules of Civil Procedure provides: "Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, **shall be signed by the party**."

[2] In the initial complaint, Plaintiff alleged that the other visitor had been asked to leave for failing to comply with requests that she not rest her head on the shoulder of the inmate she was visiting. [Doc. #1-1 p.8] In the amended complaint, Plaintiff states that the other visitor had "introduced drugs to the institution." [Doc. #27, p.4]

2

other visitor home. Ms. Lacy complied so that she could continue her visit.

Approximately thirty minutes later, Officer Hunt again interrupted Lacy and Wilson's visit. Wilson was informed that Mr. Feeney and Lieutenant Bower wanted to speak with him. Wilson was searched and then placed in the special housing unit. According to Plaintiff Lacy, the officers told her that she could no longer visit at USP-P because she was attempting to introduce contraband into the facility. Officer Holmes told Lacy that the other visitor had been caught with "dope" on her, and they believed Lacy was "instrumental in her attempt to bring the dope in." [Doc. #27, p.9]

Feeney requested that Plaintiff Lacy submit to a strip search of her body and personal effects, but Lacy refused. Officer Holmes then took a Polaroid picture of Lacy and told her that the picture would be posted at the visiting desk to prevent Lacy from making any future visits.

Plaintiff claims that Officer Holmes and the other officers refused to give Plaintiff her car keys or drivers license for some period of time, which prevented her from immediately leaving USP-P. Eventually, though, Officer Holmes returned with Lacy's keys and Lacy left.

LAW AND ANALYSIS

I.   SEARCH AND SEIZURE

Plaintiff Lacy claims that the defendants violated her right to be free from illegal search and seizure. Moreover, Plaintiff alleges that the defendants conspired to perform an illegal search and seizure of Lacy's vehicle without her authority, permission, or a search warrant. Plaintiff claims that when she obtained her keys, she found her car "disturbed, with all of the other parties belongings removed from the car." [Doc. #27, p.3]

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." See Kyllo v. United States, 533 U.S. 27, 33 (2001). One must first have a legitimate expectation of privacy to trigger the protections of the Fourth Amendment. See Hudson v. Palmer, 468 U.S. 517, 525 (1984). As to the alleged "search" of Plaintiff's vehicle, "there is a diminished expectation of privacy in an automobile to begin with." See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996); Bourgeois v. Peters, 387 F.3d 1303, 1315 (11th Cir. 2004). "Subtract from that the reduction in privacy that one can reasonably expect when going onto prison grounds, and there is not much left." U.S. v. Prevo, 435 F.3d 1343, 1348 (11th Cir. 2006); Wood v. Clemons, 89 F.3d 922, 927 (1st Cir. 1996); Spear v. Sowders, 71 F.3d 626, 632 (6th Cir. 1985).

Moreover, the standard of "reasonableness" that governs

4

searches in a given context depends, in general, upon a balancing of "the need to search against the invasion which the search entails." Camara v. Municipal Court, 387 U.S. 523, 536-37 (1967). In the volatile context of a prison, the need to preserve internal security is very strong. See Hudson v. Palmer, 468 U.S. 517, 526 (1984)). Prison officials often have a need to search visitors in some manner in order to prevent the smuggling of contraband (such as drugs or weapons) to inmates.[3]

The alleged "search" in this case was limited to Plaintiff's vehicle, was minimally intrusive, and apparently focused on the contraband that Plaintiff's passenger attempted to introduce to the prison. Accepting Plaintiff's facts as true, the search of Plaintiff's vehicle and/or person was minimally intrusive and not unreasonable so as to intrude upon her very limited expectation of privacy at USP-P. Plaintiff's claim is frivolous and should be dismissed.

---

[3] See also Neumeyer v. Beard, 421 F.3d 210, 214-215 (3rd Cir. 2005)(the prison officials' practice of engaging in suspicionless searches of prison visitors' vehicles is valid under the special needs doctrine.)(citing Spear v. Sowders, 71 F.3d at 632-33 (6th Cir. 1995)("[W]e have made it clear that a government official does not need probable cause to conduct every search and that a prison visitor search falls into a special category."); Romo v. Champion, 46 F.3d 1013, 1016 (10th Cir. 1995)("The public interest in keeping drugs out of prisons and maintaining prison security is substantial.... The stop of plaintiffs' vehicle therefore did not violate the Fourth Amendment.").

II. FIRST AMENDMENT

Next, Plaintiff claims that Officer Holmes took a photograph of Plaintiff, "without her express permission," with the intent of posting the photograph at the visitor's station to inform staff that Plaintiff was banned from visiting the institution. Also, Plaintiff claims her name was "besmirched" by being used in incident reports regarding the attempted drug introduction by her passenger. Plaintiff alleges that her First Amendment rights under the constitution were thereby violated.

In determining the reasonableness of a regulation that involves the rights of prisoners or non-prisoners, the Supreme Court inquires whether the prison regulation is reasonably related to legitimate penological objectives. United States v. Dionisio, 410 U.S. 1, 14 (1973). A regulation which does not involve fundamental rights need only be reasonably related to a legitimate goal. Id. "The 'normal activity' to which a prison is committed - the involuntary confinement and isolation of large numbers of people, some of whom have demonstrated a capacity for violence - necessarily requires that considerable attention be devoted to the maintenance of security.... [S]ecurity considerations are sufficiently paramount in the administration of the prison to justify the imposition of some restrictions on the entry of outsiders into the prison for face-to-face contact with inmates." Pell v. Procunier, 417 U.S. 817, 826-827 (1974).

6

Moreover, the Constitution provides no enhanced protection for what a person knowingly exposes to the public. United States v. Dionisio, 410 U.S. 1, 14 (1973). No person can have a reasonable expectation "that his face will be a mystery to the world." Id.; Turner v. Coughlin, 1992 WL 739947 (N.D.NY. 1992). Accepting the facts alleged by Plaintiff as true, she simply cannot establish that the process of photographing visitors who are banned from the institution is unreasonable or not related to a legitimate goal.

Plaintiff also complains that her name was used in investigative reports; however, Plaintiff does not indicate how this possibly violates any constitutional right. Clearly investigative reports are reasonably related to a legitimate concern of federal institutions. Plaintiff's claim is frivolous and should be dismissed.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DENIED and DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §1915(e)(2)(B)(i) and (ii) and 1915A(b)(1).

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within

ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 23rd day of October, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE